LA COMPAGNIE GENERALE TRANSATLANTIQUE v. MAGUIRE.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

No. 195.

1. SHIPPING (§ 84*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DEFECTIVE WAYS.

A hatch cover on the second deck of a vessel which when in place constituted part of the gangway over which employés were required to move cargo in loading the vessel constituted a "way," within the meaning of the New York employer's liability act (Laws N. Y. 1902, p. 1748, c. 600), which makes employers liable under certain conditions for injuries resulting from defects in the condition of "ways, works and machinery."

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 350; Dec. Dig. § 84.*

For other definitions, see Words and Phrases, vol. 8, pp. 7417, 7418 and 7834.]

2. SHIPPING (§ 86*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

Where the hatch cover on a vessel was made of boards eight feet long, supported only at the ends, with no strong-back across the middle, although the remainder of the deck was supported every four feet, and such cover, which was used as a part of the deck over which cargo was moved, gave way under the weight of a truck and its load, by which an employé was injured, the question whether such construction was negligent and rendered the owner liable for the injury was one for the jury.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 86.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a judgment of the Circuit Court, Southern District of New York, entered upon the verdict of a jury in favor of defendant in error in an action to recover damages for negligence.

The plaintiff was a longshoreman working on board La Gascogne. He was engaged at the time of the accident in receiving and distributing cargo on one of the between-decks; he called it the "orlop deck." The process was as follows: A draft consisting of several sheets of copper was lowered in the sling through the hatch of the deck above. This would bring it to the hatch of the deck below. The hatch cover for that deck had been put in place in the usual way by the plaintiff and his fellow workmen, and upon it there was a truck waiting to receive the descending draft. As it neared the truck the workman caught it and swayed it so that it would come into proper position on the truck. Thereupon the sling was removed, one of them took hold of the handles of the truck, and wheeled it over to the wings of the ship, inshore and outshore, where the copper was being stowed. Cargo had not yet been stowed in the

hold under this hatch. The first draft of copper sheets that came was received by the gang working on the offshore side, was placed on a truck, and wheeled off to the wings. The second draft was received by plaintiff and one Brady who were working with the inshore gang; they had a truck in position on the hatch cover, caught the draft, and brought it down on the truck. As soon as its whole weight was on the truck, two of the planks composing the hatch cover broke; Brady narrowly escaped, but plaintiff fell with the broken plank to the bottom of the hold.

The hatch was eight feet fore and aft between coamings. The planks which were used as a hatch cover were eight feet long; they rested on the projecting under edges or shoulder of the hatch, and apparently fitted securely when in place, and had been properly placed by the men before they began work. The transverse deck beams were four feet apart, so that all deck planking rested on a secure support every four feet. The planks composing the hatch cover, however, were supported only at their ends, so that for a distance of nearly eight feet they had no support at all. There was no "strong-back," so called, which is a removable transverse support placed midway in the hatch so that the planks may rest in part upon it, and thus be as well supported as the deck planks are—with four feet only between beams.

Joseph P. Nolan (John M. Nolan, of counsel), for plaintiff in error.
F. A. Acer (F. F. Davis and M. L. Malevinsky, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). This action is brought under the employers' liability act of the state of New York, chapter 600, p. 1748, Laws 1902. The first section provides that the employer shall, under certain conditions, be liable when personal injury results—

"by reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted by him with the duty of seeing that the ways, works or machinery were in proper condition."

The first contention of defendant is that the injury did not result "by reason of any defect in the condition of the ways, works or machinery." Many cases are cited in which such structures as a scaffolding for workmen to work upon have been held to be "appliances" rather than "places to work." None of these are applicable, because they were concerned solely with the common-law relations of master and servant, and not at all with the construction of this statute. The hatch cover was a portion of the gangway over which the truck was to be wheeled back and forth between the place where the sling descended and the wings; it would be difficult to find anything which was more emphatically a "way" to be kept in proper condition.

It is next assigned as error that the court refused to direct a verdict in favor of the defendant on the ground that no negligence on the part of defendant was shown. We are satisfied that it was a proper question for the jury to determine whether defendant was reasonably prudent in providing a hatch cover of this length, which when in place would become a part of the deck and would necessarily be required to support heavy weights, without giving it the measure of support which was secured to the other parts of the same deck. The

trial judge did not improperly apply the doctrine of res ipsa loquitur to an unexplained catastrophe, which upon the proofs no one could account for, or which might be accounted for on several different theories under one or more of which the master would not be in fault. The proof shows that the planks used for the hatch cover were put in place properly in the usual way, and that they gave way under the combined weight of the two workmen, the truck, and the 20 sheets of copper, manifestly because no strong-back had been provided by the master, thus leaving those planks unsupported for eight feet when no other planks on the same deck were left unsupported for more than four feet. The defendant called no witnesses, so we have no evidence that the structure had for months or years proved itself to be sufficient to meet all strains which it might reasonably be expected to bear. For aught that appears, this style of hatch cover for the orlop deck, having no strong-back support, might have been put to use for the first time during the single discharge and loading with which the plaintiff was concerned.

Defendant has argued at some length on assumption of risk and contributory negligence points which were not presented either by motion to direct, nor by exceptions to the charge. In fact no exception to the charge—a very full and careful one—was reserved.

Finally, error is assigned to the "admission of testimony of a custom of other shipowners to use strong-backs." In response to a question as to what was the usual and ordinary way of constructing a hatch, Brady, who had been working as a stevedore all over New York Harbor for 25 years, replied that there was always a strong-back to support the center of the hatch. Objection was made and exception was reserved to the allowance of this question. But if there were error in allowing it—as to which we express no opinion—it was harmless, because the same witness had some time before stated without objection or exception:

"The beams are four feet apart, and this hatch is eight feet apart. In other vessels there is a strong-back in the center of that before you put on the plank for security."

No motion was made to strike out this testimony, nor was the court asked to instruct the jury to disregard it.

The points raised as to excessive damages and as to motion for new trial cannot be considered in this court.

Judgment affirmed.